IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| NYREE CAMPBELL, o/b/o M.B., | ) | CASE NO. 1:13 CV 329 |
| | ) | |
| Plaintiff, | ) | JUDGE JOHN R. ADAMS |
| | ) | |
| v. | ) | MAGISTRATE JUDGE |
| | ) | WILLIAM H. BAUGHMAN, JR. |
| COMMISSIONER OF SOCIAL | ) | |
| SECURITY, | ) | |
| | ) | **REPORT & RECOMMENDATION** |
| Defendant. | ) | |

## Introduction

Before me by referral[1] is an action under 42 U.S.C. § 1383c by plaintiff, Nyree

Campbell, on behalf of M.B., a minor child, for judicial review of the final decision of the

Commissioner of Social Security denying her application for supplemental security income.[2]

The Commissioner has answered[3] and filed the transcript of the administrative proceedings.[4]

---

[1] The matter was referred to me under Local Rule 72.2 in a marginal entry order entered February 14, 2013.

[2] ECF # 1.

[3] ECF # 11.

[4] ECF # 12.

Under my procedural order,[5] the parties have briefed their positions,[6] submitted supporting charts,[7] and the fact sheet.[8] The parties have participated in a telephonic oral argument.[9]

For the reasons that follow, I will recommend finding that the decision of the Commissioner is supported by substantial evidence and so should be affirmed.

## Facts

### A.    Decision of the Administrative Law Judge ("ALJ")

The ALJ found that M.B.,[10] who is Campbell's son,[11] was born in 2002 and so was a school-age child on the date of the hearing in 2011.[12] After noting that M.B. had not engaged in any substantial gainful activity since the date of the 2010 application,[13] the ALJ, whose decision became the final decision of the Commissioner, found at step two that M.B. had severe impairments consisting of attention deficit hyperactivity disorder ("ADHD").[14]

---

[5] ECF # 14.

[6] ECF # 15 (Campbell's brief); ECF # 16 (Commissioner's brief).

[7] ECF # 15-2 (Campbell's charts); ECF # 16-1 (Commissioner's charts).

[8] ECF # 15-1 (Campbell's fact sheet).

[9] ECF # 19.

[10] Although the opinion of the ALJ identifies the minor child by name, both parties identify the child only by initials. I also will identify the child only by his initials.

[11] *See*, Transcript ("Tr.") at 26.

[12] Tr. at 25.

[13] *Id.*

[14] *Id.*

At Step Three, the ALJ found that M.B.'s ADHD did not meet the listing at § 112.11, nor did his impairment functionally equal any listing under §§ 416.924d or 416.926. [15] Specifically, the ALJ found that :

- M.B. has less than marked limitations in acquiring and using information;[16]

- M.B. has less than marked limitations in attending and completing tasks;[17]

- M.B. has no limitation in interacting and relating with others;[18]

- M.B. has no limitation in moving about and manipulating objects;[19]

- M.B. has no limitation in the ability to care for himself;[20]

- M.B. has no limitation in health and physical well-being.[21]

On that basis, the ALJ concluded that M.B. was not disabled  and so denied the application for SSI benefits.[22]

---

[15] *Id.* at 25-31.

[16] *Id.* at 27.

[17] *Id.* at 28.

[18] *Id.* at 29.

[19] *Id.* at 30.

[20] *Id.* at 31.

[21] *Id.*

[22] *Id.* at 32.

**B.     Issue on judicial review**

Campbell asks for reversal of the Commissioner's decision on the ground that it does not have the support of substantial evidence in the administrative record. Specifically, Campbell raises the single argument that the "ALJ did not directly address the evidence relating to ADHD evidence under Listing 112.11."[23] She notes that the ALJ's  statement of reasons as to why M.B. did not meet the listing was limited to the brief notation that "he does not experience marked limitations in functioning while following a prescribed course of treatment."[24]

Campbell asserts that this analysis is legally insufficient because: (1) "substantial evidence demonstrates that M.B. has marked limitations in social functioning and in attending and completing tasks," and (2) the "ALJ improperly read a requirement into Listing 112.11 that the child must be evaluated 'while following a prescribed course of treatment.'"[25] She argues first that the ALJ erred in giving an "extremely limited analysis" of the evidence as it pertains to this listing since it did not address the "substantial evidence of an ongoing marked limitation in [the] concentration, persistence and pace and in social functioning...."[26] Campbell further argues that the ALJ erred by referencing M.B.'s improvement in

_____

[23] ECF # 15 at 7.

[24] *Id.*

[25] *Id.* (quoting Tr. at 25).

[26] *Id.* at 11.

functioning after he began treatment.[27] This determination, she contends, "adds an additional requirement to the listing" and further ignores evidence of "significant impairments in functioning well after implementation of medication."[28]

## Analysis

### A.     Standard of review – substantial evidence

The Sixth Circuit in *Buxton v. Halter* reemphasized the standard of review applicable to decisions of the ALJs in disability cases:

> Congress has provided for federal court review of Social Security administrative decisions. 42 U.S.C. § 405(g). However, the scope of review is limited under 42 U.S.C. § 405(g): "The findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive...." In other words, on review of the Commissioner's decision that claimant is not totally disabled within the meaning of the Social Security Act, the only issue reviewable by this court is whether the decision is supported by substantial evidence. Substantial evidence is " 'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' "
>
> The findings of the Commissioner are not subject to reversal merely because there exists in the record substantial evidence to support a different conclusion. This is so because there is a "zone of choice" within which the Commissioner can act, without the fear of court interference.[29]

Viewed in the context of a jury trial, all that is necessary to affirm is that reasonable minds could reach different conclusions on the evidence. If such is the case, the Commissioner

---

[27] *Id.* at 10.

[28] *Id.*

[29] *Buxton v. Halter*, 246 F.3d 762, 772 (6th Cir. 2001) (citations omitted).

survives "a directed verdict" and wins.[30]  The court may not disturb the Commissioner's findings, even if the preponderance of the evidence favors the claimant.[31]

I will review the findings of the ALJ at issue here consistent with that deferential standard.  The relevant evidence from the administrative record will be discussed in detail as part of the following analysis.

**B.     Application of standard – The decision of the ALJ is supported by substantial evidence.**

Reviewing the decision of the ALJ here will first require setting out the elements that a child claimant must establish, and then considering whether the ALJ's decision adequately articulated the reasons why M.B. did not meet those requirements.

**1.     *Elements of child qualifying for SSI benefits***

In order to qualify for childhood SSI benefits, a claimant must show that he or she has a medically determinable physical or mental impairment that results in marked and severe functional limitations, and that is expected to cause death or that has lasted or can be expected to last for a continuous period of not less than twelve months.[32]  An ALJ must proceed through the required sequential steps for evaluating entitlement to childhood SSI.[33]  The three-step procedure requires the ALJ to determine whether a child:

---

[30] *LeMaster v. Sec'y of Health & Human Servs.*, 802 F.2d 839, 840 (6th Cir. 1986); *Tucker v. Comm'r of Soc. Sec.*, No. 3:06cv403, 2008 WL 399573, at *6 (S.D. Ohio Feb. 12, 2008).

[31] *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007).

[32] 20 C.F.R. § 416.906.

[33] 20 C.F.R. § 416.924(a).

(1)  is performing substantial gainful activity;

(2)  has a "severe" impairment or combination of impairments; and

(3)  whether the impairment or combination of impairments are of listing-level severity in that the impairment(s) either meets, medically equals or are the functional equivalent in severity to an impairment listed in 20 C.F.R. § 404, Subpart P, Appendix 1 ("Listing").[34]

In order to *meet* a Listing, the child's impairment(s) must be substantiated by medical findings shown or described in the listing for that particular impairment.[35] In order to *medically equal* a Listing, a child's impairment(s) must be substantiated by medical findings at least equal in severity and duration to those shown or described in the listing for that particular impairment.[36] In order to *functionally equal* a Listing, the child's impairment(s) must be of listing-level severity; *i.e.*, it must result in "marked" limitations in two domains of functioning or an "extreme" limitation in one domain.[37] The Commissioner assesses all relevant factors, including:

(1)  how well the child initiates and sustains activities, how much extra help he needs, and the effects of structured or supportive settings;

(2)  how the child functions in school; and

(3)  how the child is affected by his medications or other treatment.[38]

---

[34] 20 C.F.R. § 416.924(a)-(d).

[35] 20 C.F.R. § 416.925(d) (emphasis added).

[36] 20 C.F.R. § 416.926(a) (emphasis added).

[37] 20 C.F.R. § 416.926a(a)(emphasis added).

[38] 20 C.F.R. § 416.926a(a)(1)- (3).

Further, in considering whether a child's impairment functionally equals the Listings, the Commissioner begins by evaluating how a child functions on a daily basis and in all settings as compared to other children of the same age who do not have impairments.[39]

The Commissioner considers how a child's functioning is affected during his activities at home, school and in his community in terms of six domains:

(i)     acquiring and using information;

(ii)    attending and completing tasks;

(iii)   interacting and relating with others;

(iv)   moving about and manipulating objects;

(v)    caring for yourself; and,

(vi)   health and physical well-being.[40]

Lengthy definitions for "marked" and "extreme" are set out in § 416.926a(e). "Marked" limitation means a limitation that is "more than moderate" but "less than extreme." It is the equivalent of the functioning expected on standardized testing with scores that are at least two, but less than three, standard deviations below the mean.[41] "Extreme" limitation is the rating for the worst limitations. However, "extreme limitation" does not necessarily mean a total lack or loss of ability to function. It is the equivalent of the functioning that

---

[39] 20 C.F.R. § 416.926a(b).

[40] 20 C.F.R. § 416.926a(b)(1)(i)-(vi).

[41] *See*, 416.926a(e)(2)(i).

would be expected on standardized testing with scores that are at least three standard deviations below the mean.[42]

An individual has a "marked" limitation when the impairment "interferes seriously with [the] ability to independently initiate, sustain, or complete activities."[43] An "extreme" limitation exists when the impairment "interferes very seriously with [the] ability to independently initiate, sustain, or complete activities."[44] An extreme imitation may also seriously limit day-to-day functioning.[45] If the child's impairment meets, medically equals, or functionally equals the Listing, and if the impairment satisfies the Act's duration requirement, then the child is considered disabled.[46] If both of these requirements are not satisfied, then the child is not considered disabled.[47]

## 2.    *Listing § 112.11*

Listing 112.11 reads as follows:

112.11   Attention Deficit Hyperactivity Disorder: Manifested by developmentally inappropriate degrees of inattention, impulsiveness, and hyperactivity.

The required level of severity for these disorders is met when the requirements in both A and B are satisfied.

---

[42] *See*, 20 C.F.R § 416.926a(e)(3)(I).

[43] 20 C.F.R. § 416.926a(e)(2)(i).

[44] 20 C.F.R. § 416.926a(e)(3)(i).

[45] *Id.*

[46] 20 C.F.R. § 416.924(d)(1).

[47] 20 C.F.R. § 416.924(d)(2).

-9-

A.    Medically documented findings of all three of the following:

    1.    Marked inattention; and

    2.    Marked impulsiveness; and

    3.    Marked hyperactivity; and

B.    For older infants and toddlers (age 1 to attainment of age 3), resulting in at least one of the appropriate age-group criteria in paragraph B1 of 112.02; or, for children (age 3 to attainment of age 18), resulting in at least two of the appropriate age-group criteria in paragraph B2 of 112.02.

Paragraph B2 of listing 112.02 reads as follows:

For children (age 3 to attainment of age 18), resulting in at least two of the following:

a.  Marked impairment in age-appropriate cognitive/ communicative function, documented by medical findings (including consideration of historical and other information from parents or other individuals who have knowledge of the child, when such information is needed and available) and including, if necessary, the results of appropriate standardized psychological tests, or for children under age 6, by appropriate tests of language and communication; or

b.  Marked impairment in age-appropriate social functioning, documented by history and medical findings (including consideration of information from parents or other individuals who have knowledge of the child, when such information is needed and available) and including, if necessary, the results of appropriate standardized tests; or

c.  Marked impairment in age-appropriate personal functioning, documented by history and medical findings (including consideration of information from parents or other individuals who have knowledge of the child, when such information is needed and available) and including, if necessary, appropriate standardized tests; or

d.  Marked difficulties in maintaining concentration, persistence, or pace.

### 3.    Functional equivalence and § 416.926a

A claimant can medically equal a Listing, or can functionally equal a Listing. To determine functional equivalence, the Commissioner is required to assess the child's functioning in six domains: (1) acquiring and using information; (2) attending and completing tasks; (3) interacting and relating with others; (4) moving about and manipulating objects; (5) caring for yourself; and (6) health and physical well-being.[48] To prove that M.B. has an impairment that is functionally equivalent to a Listing, Campbell must show that M.B.'S impairments resulted in "marked" limitations in at least two of the six domains.[49]

### 4.    Discussion

Campbell asserts that the ALJ erred here by not explicitly addressing the question of whether M.B. met the listing at § 112.11.[50] The ALJ explained his reasons why M.B. did not meet the listing at § 112.11 in a brief, single observation that M.B. "does not experience marked limitations in functioning while following a prescribed course of treatment."[51]

First, contrary to Campbell's argument, I note that consideration of the effect of medication on controlling ADHD is proper when addressing whether a claimant has met the listing at § 112.11. As the Third Circuit observed in *Richardson v. Barnhart*,[52] 20 C.F.R.

---

[48] 20 C.F.R. § 416.926a(b)(1).

[49] 20 C.F.R. § 416.926a(d).

[50] ECF # 15 at 7.

[51] Tr. at 25.

[52] *Richardson v. Barnhart*, 136 F. App'x 463 (3rd Cir. 2005).

-11-

§ 416.924(b)(i)(A) supports an ALJ's decision that "[claimant's] medication, when monitored and administered properly, adequately controlled his [ADHD] disability [such that] any limitations that persisted did not create [conditions for a finding of disability]."[53]

That said, however, the Commissioner essentially offers a harmless error analysis that the ALJ's discussion of the elements pertaining to functional equivalence is sufficient to establish that M.B. did not actually meet or medically equal the listing.

The Sixth Circuit in *Reynolds v. Commissioner of Social Security*[54] held that an ALJ "needs to actually evaluate the evidence [at Step Three], compare it to ... the Listing, and give an explained conclusion, in order to facilitate meaningful judicial review. Without it, it is impossible to say that the ALJ's decision at Step Three is supported by substantial evidence."[55]

Despite the seeming clarity of the Sixth Circuit's pronouncement in *Reynolds* on the need for direct evaluation of the evidence against the elements of a listing, there has developed a body of authority finding grounds for harmless error in certain situations. As the district court in the Eastern District of Michigan recently observed in *White v. Colvin*,[56] a court may find an ALJ's failure to explicitly discuss whether a claimant meets or medically equals a listing at Step Three to be harmless error when the ALJ on the record "described

---

[53] *Id.* at 466 (citations omitted).

[54] *Reynolds v. Comm'r of Soc. Sec.*, 424 F. App'x 411 (6th Cir. 2011).

[55] *Id.* at 416.

[56] *White v. Colvin*, No. 4:12-CV-11600, 2013 WL 5212629 (E.D. Mich. Sept. 16, 2013).

evidence pertaining to all impairments, both severe and nonsevere, ... earlier in his opinion and made factual findings."[57]

Most cases in this District that have applied *Reynolds* and ordered a remand have done so in the context of an ALJ who made only conclusory statements about the applicability of a listing, or otherwise failed to conduct any comparison of the medical evidence to the appropriate listing.[58] But, as noted above, courts within this Circuit have found, under the Sixth Circuit decision in *Bledsoe v. Barnhart*, that an ALJ's failure to directly list the elements of a listing and then discuss the evidence of record showing that a claimant does or does not meet that listing can be harmless error if the ALJ's ultimate Step Three finding is supported by factual findings made elsewhere in the record.[59]

Here, although not specifically under a discussion of Listing § 112.11, the ALJ noted that records from Mammen Puliyel, M.D., dated August 11, 2010, or just after the alleged onset of disability, show that M.B. was doing well on his medication, and that "[h]is attention span improved, his hyperactivity was doing better and he was able to concentrate."[60] In fact,

---

[57] *Id.*, at *7 (quoting *Bledsoe v. Barnhart*, 165 F. App'x 408, 411 (6th Cir. 2006)). I note further that *White* also cites with approval that portion of *M.G. v. Comm'r of Soc.*, 861 F. Supp. 2d 846 (E.D. Mich. March 21, 2012), which states that harmless error maybe found when "concrete and factual medical evidence is apparent in the record and shows that even if the ALJ had made the required findings, the ALJ *would have* found the claimant not disabled."

[58] *See, Woodall v. Colvin*, No. 5:12 CV 1818, 2013 WL 4710516, at * 11 (N.D. Ohio Aug. 29, 2013) (collecting cases).

[59] *White*, 2013 WL 5212629, at *7 (collecting cases).

[60] Tr. at 26.

those three factors in which the ALJ specifically found that improvement was documented in a medical record are substantially the same factors that are specified in Listing § 112.11(A). Moreover, the ALJ further noted that additional specific medical findings from October, 2010, and February, 2011, showed M.B. had improved in behavior and grades.[61]

In addition to that paragraph addressing the medical evidence, the ALJ also cited medical and other evidence when reviewing the six domains applicable to functional equivalency.[62] As before, these observations further document that, since M.B. began receiving medication for his condition:

- his grades have "dramatically" improved,"[63]

- his behavior toward others has also improved to the degree that "he does not disrupt the educational process" and "is able to perform group activities and play with peers,"[64] and

- he is sufficiently in control of his impulses that he now "is able to remove himself from situations where he becomes angered with his peers."[65]

Read together, and with the understanding that the ALJ properly considered the evidence that M.B.'s medication controlled his ADHD symptoms, the evidence cited and discussed in the opinion by the ALJ shows that M.B.'s ADHD, when controlled by his

---

[61] *Id.*

[62] *Id.* at 27-31.

[63] *Id.* at 27, 28.

[64] *Id.* at 29.

[65] *Id.* at 31.

-14-

medication, did not produce marked inattention,[66] marked impulsiveness,[67] or marked hyperactivity.[68] Thus, inasmuch as these are the three factors in § 112.11(A), the ALJ's own findings articulate a sufficient basis for concluding that M.B. did not meet this portion of the listing.

Further, these specific findings by the ALJ in the opinion also show that M.B. does not meet the portions of § 112.11(B) that address:

- marked impairments in age-appropriate cognitive/communicative function,[69]

- marked impairment in social functioning,[70]

- marked impairment in age-appropriate personal functioning,[71] and

- marked difficulties in maintaining concentration, persistence, and pace.[72]

---

[66] *See*, Tr. at 27, 28, 29 (relating to improvements in grades and lack of disruption of classroom activities).

[67] *See*, *id.* at 31 (relating to ability to remove himself from confrontational situations when angered).

[68] *See*, *id.* at 29 (relating to lack of disruption of classroom activities and ability to perform group activities).

[69] *See*, *id.* at 27, 28 ("dramatic" improvement in grades).

[70] *See*, *id.* at 27, 28, 29, 31 (lack of disruption of class activities, ability to remove himself from confrontations when angered, ability to perform group activities).

[71] *See*, *id.* at 27, 28, 29 ("dramatic" improvement in grades, lack of disruption of class activities, ability to remove himself from confrontations when angered, ability to perform group activities).

[72] *See*, *id.* at 27, 28 ("dramatic" improvement in grades).

In sum, the ALJ, as required by the regulations and by *Reynolds*, clearly did not directly list the factors necessary for meeting the listing at § 112.11 and then articulate his reasons why the evidence showed that M.B. had not established that he met or medically equaled this listing. As such, and without more, this opinion would need to be remanded. Further, the mere existence of a functional equivalence discussion does not, of itself, substitute for the direct analysis of whether a listing has been met.[73]

But as the district court noted in *Evans ex rel DCB v. Commissioner of Social Security*, the Sixth Circuit in *Rabbers v. Commissioner of Social Security*[74] distinguished a failure to articulate good reasons for not affording controlling weight to the opinion of a treating physician from a failure to address the B criteria of a listing. While the former situation requires a remand because the ALJ's failure leaves the reviewing court with no option but to improperly conduct its own analysis, the situation involving a lack of discussion on listing criteria that could be addressed by the court examining other evidence of record.[75] According to the district court in *Evans*, this is why a remand for failure to articulate at Step Three is not automatic but rather that district courts are permitted to review the record to conduct a harmless error analysis.[76]

---

[73] *Evans ex rel DCB v. Comm'r of Soc. Sec.*, No. 11-CV-11862, 2012 WL 3112415, at *9 (E.D. Mich. March 21, 2012) (collecting cases).

[74] *Rabbers v. Comm'r of Soc Sec.*, 582 F.3d 647 (6th Cir. 2009).

[75] *Id.* at 656-57.

[76] *Evans*, 2012 WL 3112415, at * 11.

-16-

Here, the ALJ, as shown, did make specific findings elsewhere in his opinion that go directly to each factor of that listing and demonstrate why M.B. does not meet or medically equal the listing. By the ALJ here actually making such findings in the opinion, this case is on far firmer ground than those cases where courts have been asked to craft findings from the raw "factual and medical evidence [that] is apparent on the record."[77]

In addition, as noted above, the Commissioner properly relied on evidence of M.B.'s condition after medication when determining disability.

Finally, to the extent that M.B. contends that there is evidence supporting the view that continued difficulties existed after medication, I recommend finding that substantial evidence exists, as cited by the ALJ, to support the Commissioner's conclusion.

Thus, for the specific, limited reasons stated here, the decision of the Commissioner is supported by substantial evidence and so should be affirmed.

## Conclusion

Substantial evidence supports the finding of the Commissioner that M.B. had no disability. Accordingly, I recommend that the decision of the Commissioner denying M.B. supplemental security income be affirmed.

Dated: December 17, 2013                    s/ William H. Baughman, Jr.
                                            United States Magistrate Judge

---

[77] *M.G.*, 861 F. Supp. 2d at 861.

-17-

## Objections

Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days of receipt of this notice. Failure to file objections within the specified time waives the right to appeal the District Court's order.[78]

---

[78] *See*, *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). *See also*, *Thomas v. Arn*, 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111 (1986).